# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ÁLYA CONSTRUTORA S.A., ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. _____ |
| ) | |
| PDVSA PETROLEO S.A. and ) | |
| PETROLEOS DE VENEZUELA S.A. ) | |
| ) | |
| Respondents. ) | |
| _____) | |

## PETITION TO RECOGNIZE AND CONFIRM ARBITRAL AWARD

Petitioner Álya Construtora S.A. ("Petitioner"), by and through undersigned counsel, hereby petitions this Court for entry of an order and judgment pursuant to 9 U.S.C. § 207 (i) recognizing and confirming the partial final arbitral award dated July 25, 2023 (the "Award") in the arbitration between Petitioner, and PDVSA Petróleo S.A. and Petróleos de Venezuela S.A. (collectively, "PDVSA" or "Respondents") captioned *ÁLYA CONSTRUTORA S.A. (formerly, CONSTRUTORA QUEIROZ GALVÃO S.A.) v. PDVSA PETROLEO S.A. and PETROLEOS DE VENEZUELA S.A. (ICC Case 24306/JPA/AJP)* (the "Arbitration"); (ii) entering judgment in Petitioner's favor against PDVSA in the amount of $52,319,825.60—$51,869,218.00 as principal (the "Principal") plus $450,607.61 for the costs of the Arbitration—plus interests on the Principal amount of $51,869,218.00 at a 6%

-1-

annual rate and interest on the cost of Arbitration in the amount of $450,607.61 from the date of notification of the Award to be calculated up to the date of payment, the amount owed in interest on the Principal amount of $51,869,218.00 as of April 18, 2024 being $1,918,450.53; and (iii) awarding Petitioner such other and further relief as the Court deems just and proper.

## PARTIES

1. Petitioner Álya Construtora S.A. is a company incorporated under the laws of the Federative Republic of Brazil, with a branch (*sucursal*) registered in the Bolivarian Republic of Venezuela ("Venezuela"), under No. 5 of Book 6-A of the Commercial Registry of the Judicial District of the Capital District and State of Miranda. Petitioner has a registered office at Rua Santa Luzia, nº 651, floor 21º, Centro, 0030-041, Rio de Janeiro/RJ, Brazil.

2. Respondents are comprised of state-owned entities created under the laws of the Venezuela, with a registered office at Avenida Libertador, Urbanization La Campiña, Building Petróleos de Venezuela, East Tower, Caracas, Venezuela. Respondents are responsible for managing Venezuelan state-owned petroleum assets.

3. Respondent Petróleos de Venezuela S.A. is, as this Court has already found, an alter ego of Venezuela. *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380, 406 (D. Del. 2018), *aff'd and remanded*, 932 F.3d

126 (3d Cir. 2019). PDVSA is an instrumentality of Venezuela under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq.*, and within the meaning of 28 U.S.C. § 1603(b), and does business in Delaware through its wholly owned subsidiary and a Delaware corporation, PDV Holding, Inc. ("PDVH"). *Id.*

## JURISDICTION AND VENUE

4. Petitioner seeks confirmation of the Award, which resulted from the Arbitration between Petitioner and Respondents seated in Paris, France, under the Arbitration Rules of the International Chamber of Commerce in force as of March 1, 2017.

5. The United States and Venezuela are signatories to the 1958 United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), which governs "the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought, and arising out of differences between persons, whether physical or legal." New York Convention art. I.

6. This Court has original subject matter jurisdiction over this Petition pursuant to 9 U.S.C. § 203, which vests the federal district courts with original jurisdiction over a proceeding falling under the New York Convention.

7. PDVSA are an instrumentality of a foreign state under the FSIA and therefore would be immune from the jurisdiction of this Court except as provided in the FSIA.

8. PDVSA are not immune from the jurisdiction of this Court for purposes of this Petition because the FSIA denies immunity to an instrumentality of a foreign state in an action to confirm a foreign arbitral award. Specifically, the FSIA provides that a foreign state is not immune to jurisdiction in a suit:

> either to enforce an agreement made by the foreign state with or for the benefit of a private party to submit to arbitration all or any differences which have arisen or which may arise between the parties with respect to a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration under the laws of the United States, or to confirm an award made pursuant to such an agreement to arbitrate, if . . . the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards.

28 U.S.C. § 1605(a)(6)(B).

9. This Court also has original subject matter jurisdiction pursuant to 28 U.S.C. §1330(a), which vests the federal district courts with original jurisdiction over any nonjury civil action against an instrumentality of a foreign state if the foreign instrumentality is not entitled to sovereign immunity.

10. This Court has personal jurisdiction over PDVSA pursuant to 28 U.S.C. § 1330(b), which vests the federal district courts with personal jurisdiction over an instrumentality of a foreign state not entitled to sovereign immunity.

11. Venue is proper in this Court pursuant to 9 U.S.C. § 204 and 28 U.S.C. §§ 1391(b) and (f)(3).

## FACTUAL BACKGROUND

12. On November 27, 2014, Petitioner and co-Respondent PDVSA Petróleo S.A. entered into a contract for the design, procurement, and construction for the expansion of a gas compression plant in the State of Monagas, in Venezuela (the "PIGAP Contract"). A duly certified translated copy of the PIGAP Contract is attached hereto as Exhibit 3 to the accompanying Declaration of José Ignacio García Cueto dated December 18, 2023 (the "García Cueto Declaration" or "García Cueto Decl.").

13. The PIGAP Contract included an arbitration clause (the "First Arbitration Clause") at Clause 29.1, which provided in relevant part:

> the PARTIES shall use their best efforts to reach an amicable settlement of their differences. If no agreement is reached between the REPRESENTATIVE OF THE CONTRACTOR and the REPRESENTATIVE OF THE COMPANY, within thirty (30) DAYS the dispute shall be submitted by a Director of THE CONTRACTOR to the highest level of management authority of THE COMPANY'S CONTRACTING ORGANIZATION for consideration and resolution. If the dispute is not resolved at this level, the President of THE CONTRACTOR shall submit the same to the Liaison Director of the CONTRACTING ORGANIZATION of THE COMPANY to resolve it and, if the dispute or difference persists, then the PARTIES may submit their disputes to arbitration, in accordance with the Venezuelan Commercial Arbitration Law in force.

14. The PIGAP Contract was amended on July 28, 2015 to facilitate the financing of the project and expand its scope of work ("Addendum No. 1"). A duly certified translated copy of the Addendum No. 1 is attached hereto as <u>Exhibit 4</u> to the accompanying the García Cueto Declaration.

15. The Addendum No. 1 modified the Arbitration Clause in the PIGAP Contract (the "Amended First Arbitration Clause") at modification Sixth, which provides in relevant part:

> The PARTIES agree to modify the CLAUSE 29 – DISPUTE RESOLUTION, in order to replace Sub-Clause 29.1 with the following:
>
> 29.1 In the event of disputes arising from the performance or interpretation of this CONTRACT, the PARTIES will make their best efforts to achieve a friendly settlement of their differences. If no agreement is reached between the REPRESENTATIVE OF THE CONTRACTOR and the REPRESENTATIVE OF THE COMPANY within thirty (30) DAYS of notification by one party to the other regarding a dispute, the dispute will be submitted by a Director of THE CONTRACTOR to the highest level of management authority from the CONTRACTING ORGANIZATION of THE COMPANY, for its consideration and resolution. If the dispute is not resolved at that level within a period of thirty (30) DAYS from the notification made by a Director of THE CONTRACTOR to the highest level of management authority from the CONTRACTING ORGANIZATION of the COMPANY, the President of THE CONTRACTOR shall submit the dispute to the Liaison Director of THE COMPANY's CONTRACTING ORGANIZATION for resolution within thirty (30) DAYS.
>
> Upon expiration of the latter period and in the event that the dispute or difference has not been resolved by application of the above procedure, either PARTY may submit it to arbitration, in accordance with the following rules:

1. The Arbitration shall be conducted in accordance with the Arbitration Rules of the International Chamber of Commerce (ICC).

2. The place for arbitration will be in Paris, France.

3. The languages of the arbitration proceedings shall be Spanish and English.

4. The arbitration shall be an arbitration of law.

5. The arbitral tribunal shall consist of three (3) arbitrators. The arbitrators shall be appointed as follows: each PARTY shall appoint an arbitrator. The appointment by the party that initiated the arbitration shall be made on the request for arbitration or otherwise, at the time the arbitration is initiated. Within ten (10) DAYS after the confirmation by the last arbitrator appointed by the PARTIES, the arbitrators appointed by both PARTIES shall appoint a third party, who shall act as president of the arbitral tribunal. If the arbitrators appointed by both PARTIES fail to designate the president of the arbitral tribunal within the period set forth herein, the president shall be appointed by the ICC International Court of Arbitration, in accordance with the ICC Rules. None of the arbitrators may have been employed or a consultant to either PARTY, or its affiliates, or engaged by the PARTIES or their subsidiaries as an attorney, public accountant, or similar, or have been a member, officer, director or employee of any entity related to one of the PARTIES or any of its subsidiaries or having a financial interest in the dispute. The arbitrators shall be lawyers, of any nationality other than that of all PARTIES, and shall speak fluently the English language and the Spanish language.

6. The costs of the process shall be covered by both PARTIES, in identical parts, unless the arbitral tribunal decides otherwise in its award.

7. The PARTIES will do their best to continue to perform their obligations under the CONTRACT despite any dispute between

>   them, so that the performance of the CONTRACT is not suspended.
>
>   8. Any arbitral award shall be final and binding on the PARTIES.

16. On January 14, 2017, Petitioner and co-Respondent PDVSA Petróleo S.A. entered into a contract for the construction of two gas compression plants in the State of Monagas, Venezuela ("Carito-Pirital Contract"). A duly certified translated copy of the Carito-Pirital Contract is attached hereto as Exhibit 5 to the accompanying the García Cueto Declaration.

17. The Carito-Pirital Contract also included an arbitration clause (the "Second Arbitration Clause") at Clause 29.1, which provides in relevant part:

>   In the event of disputes arising from the performance or interpretation of this CONTRACT, the PARTIES will make their best efforts to achieve a friendly settlement of their differences. If no agreement is reached between the REPRESENTATIVE OF THE CONTRACTOR and the REPRESENTATIVE OF THE COMPANY within thirty (30) DAYS of notification by one party to the other regarding a dispute, the dispute will be submitted by a Director of THE CONTRACTOR to the highest level of management authority from the CONTRACTING ORGANIZATION of THE COMPANY, for its consideration and resolution. If the dispute is not resolved at that level within a period of thirty (30) DAYS from the notification made by a Director of THE CONTRACTOR to the highest level of management authority from the CONTRACTING ORGANIZATION of the COMPANY, the President of THE CONTRACTOR shall submit the dispute to the Liaison Director of THE COMPANY's CONTRACTING ORGANIZATION for resolution within thirty (30) DAYS.
>
>   Upon expiration of the latter period and in the event that the dispute or difference has not been resolved by application of the above procedure, either PARTY may submit it to arbitration, in accordance with the following rules:

1. The Arbitration shall be conducted in accordance with the Arbitration Rules of the International Chamber of Commerce (ICC).

2. The place for arbitration will be in Paris, France.

3. The languages of the arbitration proceedings shall be Spanish and English.

4. The arbitration shall be an arbitration of law.

5. The arbitral tribunal shall consist of three (3) arbitrators. The arbitrators shall be appointed as follows: each PARTY shall appoint an arbitrator. The appointment by the party that initiated the arbitration shall be made on the request for arbitration or otherwise, at the time the arbitration is initiated. Within ten (10) DAYS after the confirmation by the last arbitrator appointed by the PARTIES, the arbitrators appointed by both PARTIES shall appoint a third party, who shall act as president of the arbitral tribunal. If the arbitrators appointed by both PARTIES fail to designate the president of the arbitral tribunal within the period set forth herein, the president shall be appointed by the ICC International Court of Arbitration, in accordance with the ICC Rules. None of the arbitrators may have been employed or a consultant to either PARTY, or its affiliates, or engaged by the PARTIES or their subsidiaries as an attorney, public accountant, or similar, or have been a member, officer, director or employee of any entity related to one of the PARTIES or any of its subsidiaries or having a financial interest in the dispute. The arbitrators shall be lawyers, of any nationality other than that of all PARTIES, and shall speak fluently the English language and the Spanish language.

6. The costs of the process shall be covered by both PARTIES, in identical parts, unless the arbitral tribunal decides otherwise in its award.

7. The PARTIES will do their best to continue to perform their obligations under the CONTRACT despite any dispute between

>      them, so that the performance of the CONTRACT is not suspended.
>
>   8. Any arbitral award shall be final and binding on the PARTIES.

18.  On July 14, 2017, Petitioner and co-Respondent PDVSA Petróleo S.A. amended the PIGAP Contract to incorporate a provision granting Petitioner a financial advance of 15% of the costs for the acquisition of equipment and materials (the "Addendum No. 2 PIGAP"). A duly certified translated copy of the Carito-Pirital Contract is attached hereto as <u>Exhibit 6</u> to the accompanying the García Cueto Declaration.

19.  On that same date, Petitioner and co-Respondent PDVSA Petróleo S.A. also amended the Carito-Pirital Contract to incorporate a provision granting Petitioner a financial advance of 10% of the costs for the acquisition of equipment and materials (the "Addendum No. 1 Carito-Pirital"). A duly certified translated copy of the Carito-Pirital Contract is attached hereto as <u>Exhibit 7</u> to the accompanying the García Cueto Declaration.

20.  On October 9, 2018, co-Respondent Petróleos de Venezuela, S.A. early and unilaterally terminated the PIGAP Contract and the Carito-Pirital Contract. A dispute subsequently arose between Petitioner and Respondents concerning the payment of the compensation for the early termination of such contracts.

21.  On March 1, 2019, Petitioner commenced the Arbitration pursuant to the Arbitration Clause.

22. A panel of three arbitrators (the "Arbitral Tribunal") was constituted on January 9, 2020.

23. On November 8, 2019, Respondents filed their answer to the request for arbitration and alleged that the Arbitral Tribunal lacked jurisdiction to decide Petitioner's claims.

24. The Arbitral Tribunal bifurcated the proceedings to hear Respondents' jurisdictional objections. Over the course of two years, the parties submitted evidenced and briefed arguments regarding the jurisdiction of the Arbitral Tribunal. On May 24, 2022, the Arbitral Tribunal dismissed Respondents' jurisdictional objections and declared it had jurisdiction over Respondents to decide Petitioner's claim ("Award on Jurisdiction").

25. After issuing the Award on Jurisdiction, the Arbitral Tribunal instructed the proceeding to continue to address the merits of Petitioner's claims. Between June 2022 and July 2023, the Parties submitted evidence and briefed arguments on the merits of the case, including two rounds of submission, a hearing held in Paris held from January 30, 2023 to February 1, 2023, and the submission of post-hearing briefs.

26. On July 25, 2023, the Arbitral Tribunal issued the Award, a duly certified copy of which is attached as <u>Exhibit 1</u> to the García Cueto Declaration. The Award was notified to Respondents on September 7, 2023 (*See* García Cueto Decl., Ex. 2).

27. The Award grants Petitioner damages, *inter alia*, in the following amounts:

    a. $20,999,984.00 and Venezuelan Bolivar ("VEF") 00.0008 as compensation for the early termination of the PIGAP Contract, plus 6% annual interest from the date the Award was notified (*i.e.*, September 7, 2023) until the date of payment, the amount owed in interest on the $20,999,984.00 as of April 18, 2024 being $776,711.74; and

    b. $30,869,234.00 and VEF 00.0260 as compensation for the early termination of the Carito-Pirital Contract, plus 6% annual interest from the date the Award was notified (*i.e.*, September 7, 2023) until the date of payment, the amount owed in interest on the $30,869,234.00 as of April 18, 2024 being $1,141,738.79; and,

    c. $450,607.61 as a reimbursement of the costs of the Arbitration.

28. The total compensation the Award granted to Petitioner based on the above is $52,319,825.60 plus interests on the Principal amount of $51,869,218.00 at a 6% annual rate from the date of notification of the Award to be calculated up to the date of payment, the amount owed in interest on the Principal amount of $51,869,218.00 as of April 18, 2024 being $1,918,450.53.

29. The Award ordered the immediate payment of all compensations granted therein. *See* García Cueto Decl., Ex. 1, at 81 ¶ 1(r) ("[the Arbitral Tribunal] orders immediate payment of the compensations set forth in this [A]ward . . ." (emphasis added)). The Amended First Arbitration Clause and the Second Arbitration Clause also provides that the Award is final and binding for Respondents (*See* García Cueto

Decl., Ex. 4, at 15) ("[a]ny arbitral award is final and biding for the Parties")). *See also*, García Cueto Decl., Ex. 5, at 74.

### REQUEST FOR RELIEF

30. Article III of the New York Convention requires every signatory state to recognize arbitral awards as binding and to enforce them in accordance with the enforcing state's own procedural rules.

31. The United States implements the New York Convention through section 207 of the Federal Arbitration Act ("FAA"), which provides that, upon application by any party to an arbitral award under the New York Convention, a court "shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention."  9 U.S.C. § 207.

32. An application to confirm an award under section 207 of the FAA must be filed within three years of the date of the award.

33. No grounds exist for refusal or deferral of recognition or enforcement of the Award.

WHEREFORE, Petitioner respectfully requests that this Court enter an order (a) recognizing and confirming the Award dated July 25, 2023, pursuant to 9 U.S.C. § 207; (b) entering judgment in favor of Petitioner and against PDVSA in the amount of $52,319,825.60—$51,869,218.00 as the Principal plus $450,607.61 for the costs of the Arbitration— plus interests on the Principal amount of $51,869,218.00 at a

6% annual rate and interest on the cost of Arbitration in the amount of $450,607.61 from the date of notification of the Award to be calculated up to the date of payment, plus pre-judgment and post-judgment interest and costs and fees associated with the bringing of this proceeding; and (c) awarding Petitioner such other and further relief as the Court deems just and proper.

|  |  |
|---|---|
| *Of Counsel:*<br>José Ignacio García Cueto<br>CLIFFORD CHANCE US LLP<br>2001 K St NW, 9th Floor<br>Washington D.C. 20006<br>(202) 912-5123 telephone<br>(202) 912-6000 facsimile<br><br><br>Dated:  April 25, 2024<br>Wilmington, Delaware | **BERGER MCDERMOTT LLP**<br><br>*/s/ David B. Anthony*<br>David B. Anthony (No. 5452)<br>1105 N. Market St., 11th Floor<br>Wilmington, Delaware 19801<br>(302) 655-1140 telephone<br>(302) 655-1131 facsimile<br>danthony@bergermcdermott.com<br><br>*Attorneys for Petitioner Álya Construtora S.A.* |